UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GATEWAY CLIPPERS HOLDINGS LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 1541 JMB |
| | ) | |
| MAIN STREET AMERICA PROTECTION INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Currently before the Court is Defendant Main Street America Protection Insurance Company's ("Main Street") Motion to Dismiss under Rules 12(b)(2) and 12(b)(6) or Transfer Venue (ECF No. 20). Plaintiffs Gateway Clippers Holdings LLC, Gateway Clippers Holdings LLC II, and Gateway Clippers Holdings LLC III ("Gateway Clippers") filed a Response (ECF No. 29) and Main Street filed a Reply (ECF No. 35).

Gateway Clippers seek, through this action, to determine their rights under the Policy was issued by Main Street. Main Street asserts, and Gateway Clippers do not refute, that the Policy was issued in Florida and that the property insured is located in Florida. All matters are pending before the undersigned, with consent of the parties, pursuant to 28 U.S.C. § 636(c). The Court concludes that the pending motion may be resolved on the basis of the existing record. For the reasons outlined below, Main Street's motion to dismiss or, in the alternative, to transfer venue (ECF No. 20) will be granted in part and denied without prejudice in part, and the instant cause of action will be transferred to the United States District Court for the Middle District of Florida for further proceedings.

1

I.  **Procedural and Factual Background**

This matter centers on the COVID-19 pandemic and the loss of business income resulting from government-ordered shutdowns and similar concerns. Gateway Clippers sued Defendants Main Street and American Family Insurance Mutual Holding Company[1] for business income breach of contract (Count I), breach of implied covenant of good faith and fair dealing applicable to business income (Count II), declaratory and injunctive relief applicable to business income (Count III), extra expense breach of contract (Count IV), breach of implied covenant of good faith and fair dealing applicable to extra expense (Count V), declaratory relief applicable to extra expense coverage (Count VI), civil authority breach of contract (Count VII), breach of implied covenant of good faith and fair dealing applicable to civil authority coverage (Count VIII), and declaratory relief applicable to civil authority coverage (Count IX) due to Defendants' failure to indemnify Gateway Clippers, the policyholders for actual business losses incurred when business operations were involuntarily suspended, interrupted, or curtailed ("business interruption" or "business income" coverage"). Gateway Clippers also seek declaratory and injunctive relief.

Gateway Clippers are Missouri limited liability corporations with a principal place of business in St. Louis, Missouri, where management decisions are made. (Complaint, ECF No. 1 at ¶ 21; ECF No. 29-2, Crow Decl. at ¶ 3) Gateway Clippers own and operate fifty-four[2] franchised Great Clips hair salons in Florida. (Id. at ¶ 1) The employees at the St. Louis office manage the

---

[1] On January 19, 2021, the Court dismissed Defendant American Family Insurance Mutual Holding Company pursuant to Gateway Clippers' notice of voluntary dismissal. (ECF Nos. 27 and 28)

[2] The Declaration of Terry Crow ("Crow") represents that Great Clippers collectively own and operate fifty-five Great Clips hair salons in Florida, as well as in Missouri and Illinois. (Crow Decl. at ¶ 2).

2

day-to-day business activities and transactions for Gateway Clippers as well as manage their respective areas for the Florida hair salons. (Crow Decl. at ¶¶ 4-5) All of Gateway Clippers' corporate records are maintained in a St. Louis offices, and all payments made to the Gateway Clippers' Florida hair salons are deposited in a Florida bank and thereafter transferred to a St. Louis corporate banking account. (Id. at ¶¶ 7-8) All of Gateway Clippers' invoices and employees are paid from the corporate office in Missouri. (Id. at ¶ 9) Gateway Clippers conduct their corporate accounting, maintain consolidated financial statements, and receive and recognize their income in Missouri. (Id. at ¶¶ 10-11)

Main Street is incorporated in Florida with its principal place of business in Jacksonville, Florida. (Id. at ¶ 21) Main Street does not have any employees or agents in Missouri, own any property in Missouri, or conduct business in Missouri. (ECF No. 21-1, Brennan Decl. at ¶ 10) Main Street has no offices in Missouri and does not store any insurance documents in Missouri. (Brennan Decl. at ¶¶ 9-10)

This insurance dispute arises out of the state and local orders mandating the closure of fifty-four hair salons Gateway Clippers owned and operated in Florida. (Complaint, ECF No. 1 at ¶¶ 21, 56) Gateway Clippers covered each of its Florida salons with a Main Street business insurance policy that Gateway Clippers purchased using an agent in Florida. (ECF No. 1-1 at ¶ 56; Brennan Decl. at ¶ 4) The policy at issue is Policy No. BPP1387S, effective February 28, 2020, to February 28, 2021 ("the Policy") (Id.) The Policy was issued in Florida, under the authority of Florida's Office of Insurance Regulation, pursuant to Main Street's certificate of authority in Florida. (Brennan Decl. at ¶ 3) A Gateway Clippers' employee made the decision in Missouri to accept the insurance policy with Main Street. (Crow Decl. at ¶ 11)

The Policy provided coverage for loss of business income and extra expenses in the event

3

that business operations were suspended due to "direct physical loss of or damage to" the insured property. (Complaint, ECF No. 1 at ¶ 57) The Policy also covered loss of business income and extra expenses in the event that action by "civil authority," due to physical damage to other property, caused Gateway Clippers not to be able to operate its hair salons. (Id. at ¶¶ 57, 72) Furthermore, the Policy excluded from coverage "loss or damage caused by or resulting from any virus … capable of inducing physical distress, illness or disease." (Id. at ¶ 82) There is no dispute that the Policy was active and that Gateway Clippers had paid all required premiums for the Policy.

In March 2020, "something unexpected happened, a disaster that was the worst health crisis to hit the United States, an indeed the world, in over a century, a worldwide pandemic of a disease called COVID-19." (Id. at ¶ 6) On April 1, the Governor of Florida issued an order to all residents "to stay at home except for essential services. Services provided by hair salons were not deemed essential." (Id. at ¶¶ 8, 47) Likewise, the counties in Florida where Gateway Clippers' hair salons are located issued similar orders. (Id. at ¶¶ 9, 49-52) Based on these orders, Gateway Clippers' employees in Missouri decided to close all fifty-four salons in Florida between March 20 and 22, 2020; and the salons remained closed for nearly two months. (Id. at ¶¶ 10, 53; Crow Decl. at ¶ 13) Even after reopening, a decision made by Gateway Clippers' employees, the salons serviced fewer customers due to the need to socially distance. (Complaint at ¶¶ 10, 54; Crow Decl. at ¶ 13) Gateway Clippers' Missouri employees ordered masks, plexiglass dividers and capes, and Gateway Clippers' Florida employees ordered additional cleaning supplies. (Crow Decl. at ¶ 14)

On September 24, 2020, Gateway Clippers submitted a claim for loss of business income and extra expenses incurred as a result of the pandemic-related closures of their Florida salons. (Id. at ¶¶ 12, 14-17, 105; ECF No. 1-2) Gateway Clippers submitted the claim by email to a Main Street agent. (Id.) In a certified Reservation of Rights letter, dated October 1, 2020, Main Street

4

indicated that it was investigating Gateway Clippers' claim, "including assessing whether your claim is covered under the Policy." (ECF No. 1-6)  Main Street attached a questionnaire, requesting additional information to assist with the claim investigation.  (Id.)  Instead of completing the questionnaire, Gateway Clippers' counsel objected to responding to the questionnaire. (ECF No. 1-6)  In a letter dated October 6, 2020, Main Street denied coverage for the losses caused by the COVID-19 pandemic, including loss of business income and extra expense.  (ECF No. 1 at ¶¶ 15, 17; ECF No. 1-7)

## II.  Summary of Parties' Arguments

Main Street argues that this Court lacks personal jurisdiction over it.  (ECF No. 21)  In the alternative, Main Street argues that the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6), or transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

In opposition, Gateway Clippers argue that Main Street is subject to personal jurisdiction in Missouri because Gateway Clippers accepted the insurance contract in Missouri, and Main Street insured a person and the risk of loss of business income in Missouri.  (ECF No. 29-1)  In addition, Gateway Clippers assert that they do not run their Florida operations from Florida but in Missouri, by employees in Missouri, who made significant decisions related to COVID-19, including the decision to close the hair salons and then reopen the hair salons with protective equipment.

## III.  Legal Standards

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden to show that jurisdiction exists." Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820  (8th Cir. 2014).  "To successfully survive a motion to dismiss challenging personal

jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." Id. To make a prima facie showing, plaintiff must plead "sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (alteration in the original) (internal quotation marks omitted). "Although the evidentiary showing required at the prima facie stage in minimal, … the showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion…." Id. at 592 (internal citation and quotation marks omitted).

A federal court has personal jurisdiction over a properly served defendant if a state court in the forum state would have jurisdiction over that defendant. Fed.R.Civ.P. 4(k). Personal jurisdiction can be either general[3] or specific. "Specific jurisdiction, unlike general jurisdiction, requires that the defendant must purposely direct its activities at residents of the forum state and the litigation arises out of or relates to those activities." DeSirey v. Sandals Resorts, Int'l, Ltd., 2013 WL 5945075, at *3 (E.D.Mo. Nov. 6. 2013).

---

[3] Because Gateway Clippers aver in their Complaint that Main Street is a Florida corporation based in Florida without alleging any business operations in Missouri, Gateway Clippers fail to show connections to Missouri that are "so continuous and systematic as to render [it] essentially at home in the forum State" for the Court to exercise general jurisdiction over Main Street. Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (holding that a corporation has minimum contacts to support the exercise of general personal jurisdiction "when its affiliations with the State in which  suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State.") (internal quotations omitted); BNSF Ry. Co. v. Tyrell, 137 S. Ct. 1549, 1558 (2017) ("The 'paradigm' forums in which a corporate defendant is 'at home' are [its] place of incorporation and its principle place of business."). Thus, Main Street is not present in Missouri and it does not have continuous and systemic business contacts here to render it "at home" in Missouri. See Viasystems, 646 F.3d at 595 (general jurisdiction is properly asserted over an out-of-state corporation, under Missouri law, when that corporation is present and conducting substantial business in Missouri). Therefore, general jurisdiction does not exist in this case.

In a diversity action, a federal court "may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Dever .v Hentzen Coatins, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004) (internal quotation omitted). The Eighth Circuit recommends that courts undertake separate analyses of each area. Myers v. Casino Queen, Inc., 689 F.3d 904, 909 (8th Cir. 2012).

### A. Missouri Long-Arm Statute

Missouri's long-arm statue permits the exercise of personal jurisdiction over an out-of-state defendant when a cause of action arises from the defendant's performance of at least one of the acts enumerated in the statute. § 506.500.3 RSMo. If the defendant has performed at an enumerated act, Missouri courts may exercise jurisdiction to the full extent permitted by due process principles. Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 232 (Mo. banc. 2010) (internal quotation marks omitted). The particular types of action relevant here are the following subsections: the transaction of any business within this state, the making of any contracts within this state, and contracting to insure any person, property or risk located within Missouri at the time of contracting. See Mo. Rev. Stat. § 506.500 (1, 2, 5).[4]

### B. Due Process

Even if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, the Constitution poses limits on a State's exercise of personal jurisdiction over non-resident defendants under the Due Process Clause. See Walden v. Fiore, 571 U.S. 277, 284 (2014). The analysis under the Due Process Clause requires "minimum contacts" between the nonresident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286,

---

[4] The Missouri long-arm statute includes other prongs for conduct that are not at issue.

7

297 (1980). Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 297. The defendant must have "purposefully avail[ed] itself of the privilege of conduction activities within the forum [s]tate," thus invoking the benefits and protections of the state's laws. Id.; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (due process requires that a defendant purposefully direct its activities at the forum state in a suit that "arises out of" or "relates to" these activities in order to be subject to personal jurisdiction in the forum).

The foregoing principles are discussed in greater detail in the analysis below.

**IV.     Discussion**

Whether considered under Missouri's long-arm statute, or the Due Process Clause, the undersigned concludes that this Court may not exercise specific personal jurisdiction over Main Street in this matter.

The Eighth Circuit has recently found personal jurisdiction present where the defendant had in-person meetings in the forum state (Arkansas) sent numerous calls, emails, and text messages to plaintiffs in Arkansas, shipped samples of the product to Arkansas, developed a sales pitch for Arkansas, and made clear his desire to establish a relationship because of the plaintiffs' connections to Arkansas. See Whaley v. Esebag, 946 F.3d 447, 452-53 (8th Cir. 2020). The Court opined "these facts suggest that [defendant's] contacts with Arkansas were not 'random, fortuitous, or attenuated,' but rather were central to an alleged scheme to 'purposefully avail [] [himself] of the privilege of conducting activities' in Arkansas." Id. (quoting Burger King, 471 U.S. at 475). Gateway Clippers fail to establish any of the same, or similar, types of contact.

### A. Missouri Long-Arm Statute

As indicated above, pursuant to the Missouri long-arm statute, this Court may exercise personal jurisdiction over Main Street if Gateway Clippers show that the case falls within at least one of three categories: (1) the transaction of business within the state; (2) the making of a contract within the state; or (5) contracting to insure any person, property or risk located within Missouri at the time of contracting. See Mo. Rev. Stat. § 506.500. See also Dairy Farmers of America, Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 475 (8th Cir. 2012) (explaining that, although Missouri's long-arm statute reaches the limits of due process, it does so only within specific categories enumerated in that statute).

#### 1. Transacting Business within Missouri

For Main Street to have transacted business within Missouri under the long-arm statute, Main Street "must have conducted some activity, directly or indirectly related to the transaction in question." Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 312 (8th Cir. 1982). Gateway Clippers have failed to allege that Main Street ever visited Missouri, had any suit-related business here, or availed itself of the benefits or protections of Missouri. See Morningside Church Inc. v. Rutledge, 2020 WL 3556096, at *4 (8th Cir. 2021).

The evidence before the Court shows that Main Street did not transact any business in Missouri within the meaning of the long-arm statute. The record shows that Main Street did not reach out and initiate business within the State of Missouri. See Burger King, 471 U.S. at 473 ("[W]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state 'are subject to" personal jurisdiction.). The Policy insured property in Florida, Gateway

9

Clippers' business operations of the fifty-four hair salons. Moreover, the Policy was issued in Florida and subject to Florida insurance regulatory authority.

Here, there is no indication that Main Street had offices, property, personnel, or any agents in Missouri. Main Street solicited the business relationship with Gateway Clippers in Florida. No face-to-face meetings occurred in Missouri. See Dairy Farmers, 702 F.3d at 476. The only connection with Missouri is Gateway Clippers are based in Missouri, but "'[a] contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." Cepia, 177 F. Supp. 3d at 1143. The fact that Gateway Clippers conducted its corporate accounting in Missouri and received and recognized its income in Missouri is not sufficient. Id. ("The fact that [Gateway Clippers] may have felt the harm [reduced revenue] in Missouri is of little consequence to the Court's due process, minimum contact analysis."). Main Street's only contacts with Missouri are the Policy with Gateway Clippers and some email communications related to issuing the Policy and processing Gateway Clippers' claim. See Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); see also Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996) ("Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction.").

Even if one were to conclude that Main Street's conduct amounted to "transacting business" in Missouri, the exercise of personal jurisdiction over Main Street in this case would not comport with due process consideration, as more fully discussed below.

### 2. Making a Contract in Missouri

The facts before the Court also indicate that personal jurisdiction over Main Street

10

cannot be found within the "making of a contract" section of the long-arm statute. Under Missouri law, "for purposes of the long-arm statute, a contract is made where acceptance occurs." Strobehn v. Mason, 397 S.W.3d 487, 498 (Mo. Ct. App. 2013).

Although a Gateway Clippers' employee made the decision in Missouri to accept the policy with Main Street, Gateway Clippers purchased the Policy through an agent in Florida; and Main Street issued the Policy in Florida purchased through an insurance agent in Florida, under the authority of Florida's Office of Insurance Regulation, pursuant to Main Street's certificate of authority in Florida and. (Brennan Decl. at ¶¶ 3-4) The only connection with Missouri is that Gateway Clippers are based in Missouri, but "'[a] contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state.'" Cepia, 117 F. Supp. 3d at 1143 (quoting K-V Pham, 648 F.3d at 593. Accord Walden, 571 U.S. at 277 ("The plaintiff cannot be the only link between the defendant and the forum."). Here, the Policy covered activities and efforts which the parties intended to occur outside of Missouri.

### 3. Contract to Insure Property or Risk within Missouri

The facts before the Court also indicate that personal jurisdiction over Main Street cannot be found within the "insuring property or risk" section of the long-arm statute because the property or risk insured were the fifty-four salons located in Florida, not Missouri. Gateway Clippers purchased the Policy, subject to Florida insurance regulatory authority, to insure property or risk located in Florida. The fact that Gateway Clippers received and recognized their income in Missouri is not sufficient. Cepia, 177 F. Supp. 3d at 1143 ("The fact that [Gateway Clippers] may have felt the harm [reduced revenue] in Missouri is of little consequence to the Court's due process, minimum contact analysis.").

## B. Due Process/Minimum Contacts Analysis

Even if a plaintiff satisfies the forum's long-arm statute, a federal court may exercise diversity jurisdiction over a nonresident defendant only if the defendant has sufficient minimum contacts with the forum that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and quoted case omitted). "[I]t is essential in each case that there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Due process is satisfied and jurisdiction may be exercised when a non-resident defendant's contacts with the forum state are sufficient so that it "should reasonably anticipate being haled into court there." Fastpath, 760 F.3d at 820-21.

"The 'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of some third person.'" Id. at 821 (quoting Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693-94 (8th Cir. 2003)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Walden, 571 U.S. at 284.

The Eighth Circuit has "established a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state." Fastpath 760 F.3d at 821.

> The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties…

Id. "Although 'the first three factors are primary factors, and the remaining two are secondary factors,' we look at all of the factors and the totality of the circumstances in deciding whether

12

personal jurisdiction exists." K-V Pharm., 648 F.3d at 592-93 (quoting Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010)).

As to factors one and two, the nature, quality, and quantity of Main Street's contacts with Missouri, these factors weigh in Main Street's favor. Main Street's only contacts with Missouri consist of scattered communications based on the Policy issued to Gateway Clippers, a forum state entity, related to issuing the Policy and processing the claim made by Gateway Clippers. These contacts alone are insufficient to confer jurisdiction under the due process clause. See Diary Farmers, 702 F.3d at 479 (defendant's communications with plaintiff insufficient to support the exercise of jurisdiction); Viasystems, 646 F.3d at 594 (scattered emails, phone calls, and a wire transfer of money to plaintiff are isolated contacts that are the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction). Moreover, Main Street has not purposely directed any of its activities as Missouri residents. The Policy was issued in Florida, was subject to Florida insurance regulatory authority, and insured hair salons that were all located in Florida. Likewise, Main Street does not have any employees in Missouri, does not own any property in Missouri, and does not conduct business in Missouri. Thus, Main Street's contacts with Missouri must be considered random and not connected to Missouri in any meaningful way. Morningside Church, 2021 WL 3556096, at *3-4 .

The fourth factor, a secondary factor set forth in K-V Pharm. Co., 648 F. 3d at 592-92, weighs in favor of Gateway Clippers. Missouri clearly has an interest in providing a forum to its residents who claim to have been injured by the effects of a tort or contractual dispute. Rafferty v. Rafferty, 2016 WL 319593, at *8 (E.D.Mo. Jan. 27, 2016); Fastpath, 760 F.3d at 824 (finding that while Missouri had an interest in providing a forum for its residents, "that interest cannot make up for the absence of minimum contacts") (internal quotation omitted). But this secondary factor

is insufficient to resolve the jurisdictional question in favor of Gateway Clippers. "To conclude otherwise would render the three primary factors irrelevant in most, if not all, cases." Cepia, 177 F. Supp. 3d at 1150.

The fifth factor is largely neutral. A lawsuit in Missouri would inconvenience Main Street as much as a lawsuit elsewhere would inconvenience Gateway Clippers.

Having fully considered this matter, the Court concludes that Gateway Clippers have failed to make a prima facie showing of facts sufficient to support the exercise of personal jurisdiction in this case. Gateway Clippers have not cited a case wherein a court found that it had personal jurisdiction over a nonresident defendant with similar contacts to the forum as Main Street has to Missouri. Accordingly, the Court finds there have not been sufficient minimum contacts with Missouri such that the maintenance of jurisdiction herein would not offend traditional notions of fair play and substantial justice. The nature, quality, and quantity of Main Street's contacts with Missouri were not such that this Court's exercise of personal jurisdiction over Main Street comports with due process.

Because this Court finds that it does not have jurisdiction over this matter, the Court declines to entertain the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). See Int'l Mulch Co., Inc. v. Novel Ideas, Inc., 2014 WL 6775954, at *8 (E.D.Mo. Dec. 2. 2014). However, the Court will address Main Street's alternative request to transfer the cause of action to the Middle District of Florida, where venue is proper. 28 U.S.C. § 1391(a). Litigation in Missouri inconveniences Main Street and litigation in Florida inconveniences Gateway Clippers.

**C. Motion to Transfer Venue**

In the alternative, Main Street asks the Court to transfer this case to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Here, Main Street resides in the Middle District of

Florida, a substantial part of the events giving rise to this action occurred there, and "a substantial part of the property that is subject to the action is situated" in the Middle District of Florida. 28 U.S.C. § 1391(b).

"For the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Id. "The court may transfer a case pursuant to § 1404(a) even without personal jurisdiction over a defendant." Blume v. Int'l Servs., Inc., 2012 WL 1957419, at *3 (E.D.Mo. May 31, 2012). This case "might have been brought" in the Middle District of Florida, as an alternative to where it was filed in the Eastern District of Missouri. 28 U.S.C. § 1404(a). Main Street's headquarters are located in Jacksonville, Florida, making the Middle District Main Street's place of residence. In addition to Main Street's headquarters, every relevant event occurred in Florida or focused on Florida. The fifty-four hair salons covered by the Policy were all located in Florida. The closure of the salons occurred in Florida, at least in part due to local orders. The additional expenses were incurred for salons in Florida. Thus, there can be no doubt that his case could have been brought in the Middle District of Florida. 28 U.S.C. § 1404(a).

In deciding a motion to transfer, a district court must weight and case specific factors that relate to "convenience and fairness…." In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (internal quotation marks and citations omitted); see also Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997) (stating that courts generally must consider the convenience of the parties, the convenience of the witnesses, and the interests of justice when deciding a motion to transfer). In addition, "federal courts give considerable deference to plaintiff's choice of forum and thus the party seeking transfer under section 1404(a) typically bears the

burden of proving a transfer is warranted." Id. at 695. "This general practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one." In re Apple, 602 F.3d at 913.

In consideration of the convenience to the parties, the balance favors neither party as Gateway Clippers are a corporate Missouri resident, and Main Street is a corporate Florida resident. The convenience of the witnesses appears to favor Main Street because third-party witnesses may be testifying regarding the Florida hair salons' damages due to the pandemic and the circumstances surrounding their closure are likely to reside in Florida, not Missouri, as well as the witnesses testifying regarding Main Street's making of the contract and the handling of the insurance claims. Although Gateway Clippers' business records and decision-making witnesses are located in the St. Louis office, Gateway Clippers' busines operations and the insured hair salons at issue, are located in Florida, and this action concerns the operation and closure of these Florida hair salons. The emails exchanged among the parties and witnesses can be produced anywhere.

As to the public-interest factors, these weigh in favor of transfer to Florida. The instant case involves a Florida insurance policy, issued under the authority of the Florida of Insurance Regulation, issued by a Florida insurer subject to its Florida certificate of authority, to provide insurance coverage of property located in Florida.

The Court recognizes that transferring the matter from Gateway Clippers' chosen forum may place an additional burden on them, as noted above. Thus, the Court finds that, in the interests of justice and judicial economy, this matter will not be dismissed but will be transferred to the Middle District of Florida. See Follette v. Wal-Mart Stores, Inc., 41 F.3d 1234, 1238 (8th Cir. 1994) (correct course of action was for district court to either dismiss the suit for want of personal

jurisdiction or transfer the suit to another jurisdiction where personal jurisdiction and venue did exist).

## V. Conclusion

The Court finds that Gateway Clippers have not presented sufficient evidence to conclude that Main Street is subject to personal jurisdiction in the Eastern District of Missouri. The Court opines that justice will not be served by dismissing this action and requiring Gateway Clippers to refile in Florida, when the case can be transferred. Based on the foregoing, the Court will transfer this case to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Main Street America Protection Insurance Company's Motion to Dismiss under Rules 12(b)(2) and 12(b)(6) or Transfer Venue (ECF No. 20) is GRANTED in part and DENIED without prejudice in part. The motion is granted to the extent it seeks transfer to the United States District Court for the Middle District of Florida for further proceedings.

**IT IS FURTHER ORDERED** that an appropriate order of transfer will accompany this memorandum and order.

**IT IS FURTHER ORDERED** that Defendant Main Street America Protection Insurance Company's Motion for Leave to File Notice of Supplemental Authority (ECF No. 36) is DENIED as moot.

Dated this 14th day of September, 2021.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE